UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
OMNI FOOD SALES,                                           :
                                                           :
                              Plaintiff,                   :          06 Civ. 119 (PAC)
                                                           :
              -against-                                    :          OPINION & ORDER
                                                           :
EDWARD BOAN, PREMIER FOOD SALES,                           :
and MARK GREENBERG                                         :
                                                           :
                              Defendants.                  :
------------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Omni Food Sales ("Omni") initiated this tort action against

Defendants Edward Boan ("Boan") and Mark Greenberg ("Greenberg") for improperly

causing the termination of a brokerage contract between Omni and Cargill Meat

Solutions ("Cargill" formerly Excel Corporation).  Defendants move to dismiss the

Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons

discussed below, the motion is denied in part and granted in part.

## BACKGROUND

Omni is a broker for meat products in New York and New Jersey.  From

1999 to June 2002, Boan was President of Omni.  Cargill is a meat manufacturer and

processor.  Pursuant to a five-year contact ("Omni/Cargill contract"), Omni (with Boan

serving as President) represented Cargill in its fresh pork sales to the New York

metropolitan area from March 1999 to June 2002.  In May 2002, Boan's employment

with Omni ended (the parties dispute whether Boan resigned or was fired).  In June 2002,

Cargill terminated the Omni/Cargill contract, alleging that Omni had committed a breach.

In July 2002, Cargill replaced Omni with Boan, via Boan's new company, Premier Food

Sales, to act as its broker.  One of Cargill's top meat purchasers is ShopRite (also known as Wakefern), which employed Defendant Greenberg as a buyer.

### The Omni/Cargill Arbitration Proceedings

In March 2004, Omni commenced arbitration (as required by the Omni/Cargill contract) against Cargill for Cargill's early termination of the contract.  The panel of three AAA members conducted approximately six full days of hearing, which included the testimony of seven witnesses.[1]

Omni asserted four causes of action against Cargill in the arbitration: (1) breach of contract for a) failing to pay the severance compensation, b) failing to provide the six-months notice of intent to terminate the contract, and c) hiring Boan and appropriating Omni's confidential proprietary business information; (2) misappropriation of trade secrets for a) misappropriating Omni's customer contacts and sales information, and b) Cargill and Boan's use of Omni's proprietary business information and trade secrets to gain an unfair competitive advantage over Omni; (3) unfair competition for Cargill and Boan's use of secret proprietary business information and trade secrets to gain an unfair competitive advantage over Omni; and (4) violation of New York Labor Law § 191 for failure to pay the severance compensation.

Cargill counterclaimed for: (1) breach of contract; (2) breach of implied duty of good faith and fair dealing; and (3) breach of fiduciary duty.

During the arbitration, both parties asserted that the other breached the contract.  Cargill argued that in April 2002, Omni improperly engaged in negotiations for a brokerage contract to represent Cargill's rival, John Morrell & Co. ("Morrell"), in meat

---

[1] The full record, which was not submitted to the Court, apparently totals some 3,600 pages.

sales in the New York Metropolitan area.[2]  This, Cargill asserted, was a breach of the

terms of the Cargill/Omni contract to provide exclusive representation, which justified

Cargill's termination of the contract.  Omni, on the other hand, argued that there was no

conflict of interest or breach in the Morrell negotiations.

During the course of the arbitration proceedings, in either December 2004

or January 2005, Omni and Cargill learned that Boan had been making millions of dollars

of secret payments to Mark Greenberg, the meat buyer for ShopRite.[3]  Despite

disagreement between Omni and Cargill concerning the relevancy of these secret

payments to the arbitration proceedings, the arbitrators nonetheless sought testimony and

evidence surrounding the payments.[4]

Following the discovery of these payments between Boan and Greenberg,

Omni fired Boan and ShopRite fired Greenberg.

### *Arbitration Decision*

The Panel found that Cargill had breached the contract; and awarded

Omni the full amount possible pursuant to the liquidated damages provision of the

contract—approximately $1.9 million plus costs and attorney's fees.  The Panel

determined that Cargill did not provide adequate notice of intent to terminate as required

by the contract, and that it should have given Omni a greater opportunity to explain its

dealings with Morrell prior to issuing the letter terminating the contract.  With respect to

Cargill's decision to terminate the Omni/Cargill contract, the Panel also opined that:

---

[2] The Morrell agreement was apparently executed by Omni but ultimately rejected by Morrell.  (Conroy Decl. Ex. B. ¶ 2.)
[3] These payments allegedly began two months after Boan left Omni and began working for Cargill directly. (See Boan Suppl. Mem. 8.)
[4] Defendants Boan and Greenberg (neither of whom ultimately testified at the arbitration) characterize these payments as "accrual payments," which are incentives paid by meat manufacturers to the broker to promote particular products in the retail stores.  (See id. at 6.)

> [Cargill's] senior officials may have been inappropriately influenced by the conduct of Mr. Boan and/or [ShopRite's] senior pork buyer [Greenberg], both of whom were terminated as a result of improper financial activities.

(Conroy Decl. Ex. B ¶ 6.)

The Panel also found that Cargill violated Section 12 of the contract by employing Boan, but that it was entitled to no further damages for this breach beyond the severance payments.  It further found that Cargill wrongfully obtained Omni's proprietary information from Boan.  It held New York Labor Law § 191 to be inapplicable, and also denied punitive damages.  All of Cargill's counterclaims were denied.

### *This Litigation*

Following its arbitration victory, Omni initiated this action, based on diversity jurisdiction, against Defendants Boan and Greenberg on January 6, 2006, alleging three torts: (1) unfair competition; (2) breach of fiduciary duty; and (3) continuous interference with prospective contractual relations.  Omni seeks money damages and a permanent injunction enjoining Defendants from further use of Omni's proprietary information.  Omni alleges that "Boan used Omni's confidential proprietary papers and other proprietary information of Omni to convince Cargill to use Boan or Premier as Cargill's meat broker to ShopRite in New York and New Jersey."  (Compl. ¶ 18.)  Omni further alleges that Boan made "secret payments" to Greenberg in excess of $1,000,000, "in furtherance of the Conspiracy" which successfully resulted in "Cargill reject[ing] Omni as an actual and potential broker of Cargill meat products to ShopRite from in or about July 2002 and continuing to and including July 2005."  (Compl. ¶ 23-24.)

In March 2006, Defendants Boan and Premier (Defendant Greenberg later joined in the motion) moved to dismiss the Complaint on various grounds: (1) the claims are barred by <u>res judicata</u> based on the prior arbitration proceedings; (2) the claims are barred by principles of double recovery; (3) the claims are time-barred; and (4) the claims of unfair competition and tortious interference fail to state a claim.  In July 2006, the Court unsealed the arbitration record and granted the parties additional time to brief the Court after its review.  The parties submitted supplemental briefs, including summaries of the arbitration, and the motion was fully briefed in November 2006.  Oral argument was heard February 7, 2007.  After due consideration, the Court denies the motion in part, and grants it in part.

## STANDARD OF REVIEW

In evaluating a motion to dismiss a complaint under Rule 12(b)(6), the Court must determine whether the "[f]actual allegations … raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1965 (2007) (internal citations omitted).  Furthermore, the Court "must accept as true all of the factual allegations set out in plaintiff's complaint [and] draw inferences from those allegations in the light most favorable to plaintiff …."  <u>Gregory v. Daly</u>, 243 F.3d 687, 691 (2d Cir. 2001) (citation omitted).  Consideration is limited to the factual allegations in a plaintiff's complaint, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in the plaintiff's possession or of which the plaintiff had knowledge and relied on in bringing suit.  <u>See</u> <u>Brass v. Amer. Film Techn., Inc.</u>, 987 F.2d 142, 150 (2d Cir. 1993).

**DISCUSSION**

**I.  <u>Res</u> <u>Judicata</u>**

Defendants argue that Omni is precluded from maintaining this action because the same claims were heard and decided in the prior arbitration proceedings. The Court disagrees.

"Under the doctrine of <u>res judicata</u>, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." <u>EDP Med. Computer Sys., Inc. v.</u> <u>United States</u>, 480 F.3d 621, 624 (2d Cir. 2007) (internal quotation marks and citations omitted).  "Thus, the doctrine bars later litigation if an earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." <u>Id.</u> (internal quotation marks and citations omitted).[5]  Defendants bear the burden of showing that claim preclusion applies.  <u>See</u> <u>Thomas v. City of New York</u>, 814 F. Supp. 1139, 1139 (E.D.N.Y. 1993).  The parties do not dispute that the arbitration was a final judgment on the merits by a court of competent jurisdiction; but the parties are obviously not the same, nor were they privies.  The causes of action are different as well.

**A.  Same Parties or Privies**

The only parties to the arbitration were Omni and Cargill.  Neither Boan nor Greenberg was a party to the Omni/Cargill contract.[6]  Neither Boan nor Greenberg were named as defendants in the arbitration for good reason—since they were not parties to the contract, they could not have been forced to arbitrate.  Boan's efforts to shield

---

[5] The same standards apply under New York law.  <u>See</u> <u>Chase Manhattan Bank v. Celotex Corp.</u>, 56 F.3d 343, 346 (2d Cir. 1995).

[6] Boan was not even employed by Omni at the time the Omni/Cargill was executed.

himself from this action by asserting that he was somehow in privity with Cargill are to no avail:

> [T]he principle of privity bars relitigation of the same cause of action against a new defendant known by a plaintiff at the time of the first suit where the new defendant has a sufficiently close relationship to the original defendant to justify preclusion. This determination often requires a court to inquire whether a party "control[led] or substantially participate[d] in the control of the presentation on behalf of a party" to the prior action.

Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359, 367-68 (2d Cir. 1995) (internal citations omitted).

Boan alleges that for part of the arbitration proceedings, he and Cargill secretly operated under a "Temporary Joint Defense Agreement," (although he is unable to demonstrate its existence).  Even if this defense agreement existed, however, it would prove only a litigation alliance; it alone would not create privity.  There is simply no evidence that Boan either "controlled or substantially participated in the control" of Cargill's presentation in the arbitration.  Moreover, the present argument flies in the face of their conduct during the arbitration.  Both Boan and Greenberg went to great lengths to avoid any participation or association with the arbitration whatsoever.  Boan refused to appear as a witness at the arbitration by communicating through his attorney that he was "sick and will continue to be sick for the indefinite future, and is not showing up to this arbitration."  (Omni's Suppl. Mem. 15.)  Boan refused to answer and invoked his Fifth Amendment Rights rather than responding to Omni's interrogatories.  (Boneberg Decl. Ex. K).  Furthermore, any "sufficiently close relationship" Boan may have had by way of the supposed Joint Defense Agreement had surely ceased when Cargill fired Boan and terminated the agreement midway through the arbitration.

As for Defendant Greenberg, who was employed by ShopRite/Wakefern, there is not even an argument to be made for privity. Greenberg was not a party to the Omni/Cargill contract, he was not a party to the arbitration, he was never employed by either party, and had no involvement in the arbitration, other than attempting to avoid participation.[7]

### B.  Same Cause of Action

Privity aside, <u>res judicata</u> cannot be applied here, because the prior action did not involve the same cause of action, or a common nucleus of operative facts. The purpose of this requirement is to foreclose a party from plaintiff "splitting" his claim into various suits, based on different legal theories, against the same defendants or their privies. <u>Waldman v. Village of Kiryas Joel</u>, 207 F.3d 105 (2d Cir. 2000). Although the circumstances of the alleged Boan/Greenberg "accrual payments" were relevant to the arbitration proceedings (though the parties strongly dispute the nature and extent of the relevance), which prompted the Panel to seek more evidence on the matter, the payments and alleged wrongdoing of Boan and Greenberg were examined only in the context of background information of the Omni/Cargill contract breach. The central focus of the proceedings was the sufficiency of Cargill's proffered justification for terminating the Omni/Cargill contract—Omni's inappropriate negotiations with Morrell, Cargill's competitor. Moreover, the existence or propriety of the payments cannot be said to be fully litigated, given Boan and Greenberg's outright refusal to participate in the arbitration.

Accordingly, the Court finds that Defendants have not carried their burden of proving that these claims are barred by <u>res judicata</u>.

---

[7] Like Boan, Greenberg did not appear to testify (<u>See</u> Boan Suppl Mem. 8.)

## II.  Double Recovery

Defendant Greenberg asserts that Omni is seeking the same damages in the instant action as it sought in the arbitration, and therefore, any further recovery should be barred as double recovery.  See Commerzanstalt v. Telewide Sys., 880 F.2d 642, 649 (2d Cir. 1989).  This argument fails as well.

In the arbitration, Omni sought damages for: (1) breach of contract; (2) misappropriation of trade secrets; (3) unfair competition for Cargill and Boan's use of secret proprietary business information and trade secrets to gain an unfair competitive advantage over Omni; and (4) violation of New York Labor Law.  Pursuant to the liquidated damages provisions of the contract, the Panel awarded $1.9 million.  Although the Panel found that Cargill violated Section 12 of the Omni/Cargill contract by employing Boan, it concluded that Omni was not entitled to any damages beyond the severance payments.  The Arbitration Award covered only Omni's contract damages— none of the $1.9 million represented damages for tort claims, including those relating to the misappropriation of proprietary information.  Consequently, Greenberg's argument that any tort damages here would be a double recovery is wrong, as Omni explains:

> Omni's tort damages in this action are measured differently from the liquidated contractual damages to which Omni was entitled in the Arbitration.  For example, Omni seeks to recover the value of the actual business that it lost as a result of Defendants' tortious conduct, for example, new business that was obtained by Mr. Boan from Cargill that was above and beyond Omni's average commissions on sales to ShopRite, which was the subject of the Arbitration. For example, Omni believes that Mr. Boan received commissions on new products sold to ShopRite that were introduced during the time of Defendants' tortious activities.  Omni believes that it is entitled to the value of these commissions and damages.  Thus, Omni intends to prove that it was denied the opportunity to act as a broker

> for Cargill because the secret payments that Mr. Boan was making to Mr. Greenberg effectively induced Cargill and ShopRite to shut out any other broker, thereby improperly interfering with Omni's ability to compete in the marketplace. This goes well beyond the claims and damages at issue or determined during the Arbitration.

(Omni Suppl. Br. 7.)  Clearly, Omni is seeking damages other than those already awarded in the arbitration decision.  Therefore, the Court rejects Defendants' argument that Omni is seeking a double recovery.

### III.  Statute of Limitations

Defendants next argue that Omni's tort claims are barred by their respective three-year statues of limitations since each accrued in 2002, and Omni did not commence this action until 2006.  The Court will address each claim in turn.

### A.  Breach of Fiduciary Duty

Under New York law, the statute of limitations for a breach of fiduciary duty claim depends on the substantive remedy that the plaintiff seeks.  See Merine v. Prudential-Bache Utility Fund, Inc., 859 F. Supp. 715, 725 (S.D.N.Y. 1994).  A claim requesting legal relief is governed by the three-year statute of limitations of N.Y. C.P.L.R. § 214(4), while a claim requesting equitable relief is governed by the six-year residual limitations period prescribed by N.Y. C.P.L.R. § 213(1).  Here, Omni seeks both equitable (injunctive) and legal (monetary) relief, therefore the claim is subject to the six-year period.  Because the cause of action accrued, at the earliest, in 2002, the claim is clearly timely.  See Netzer v. Continuity Graphic Assocs., Inc. 963 F. Supp. 1308 (S.D.N.Y. 1997); see also Katz v. Bach Realty, Inc. 192 A.D.2d 307 (N.Y.A.D. 1st Dept. 1993).

**B.  Unfair Competition**

The statute of limitations for unfair competition claims under New York law has "been treated disparately in New York."  Ediciones Quiroga, S.L. v. Fall River Music, Inc., 1995 WL 103842, at *7 (S.D.N.Y. Mar. 7, 1995).  In most cases, the period will be three years, however, "as the doctrine of unfair competition encompasses a broad range of unlawful or immoral business practices, the requisite statutory period is equally flexible and will depend on the underlying alleged actions giving rise to the claim." Trustforte Corp. v. Eisen, 814 N.Y.S.2d 565 (Table) (N.Y.Sup. 2005) (discussing Greenlight Capital, Inc. v. GreenLight (Switzerland) S.A., 2005 WL 13682 (S.D.N.Y. Jan. 3, 2005).  Here, the underlying conduct that Omni alleges is a "conspiracy by defendants to unfairly compete in the meat brokerage industry by means of Edward Boan's … breach of his fiduciary to his employer Omni and by means of Boan's secret payment of millions of dollars to defendant Mark Greenberg … who controlled meat purchases for Wakefern Corp. …."  (Compl. ¶ 1.)  The unfair competition claims are based primarily on Boan's breach of his fiduciary duty to Omni, therefore the more appropriate period is six-years, the period for breach of fiduciary duty.  See, e.g., Katz, 192 A.D.2d at 307 (applying a six-year period to unfair competition claim because the alleged acts giving rise to the unfair competition claim also gave rise to a breach of fiduciary duty claim, which is governed by the six-year statute of limitations); Mario Valente Collezioni, Ltd. v. AAK Ltd., 280 F. Supp. 2d 244 (S.D.N.Y. 2003) (applying six-year period to unfair competition claim because the underlying behavior was more "akin to New York state fraud claims of six years" where "the crux of the claim against Defendants involves the surreptitious selling by undisclosed agents of … defendants in

violation of the exclusive distributorship of Plaintiff by means of false and misleading representations made on behalf of the … defendants to Plaintiff's customers").  Since the applicable statute is six years, this claim is also timely.

### C.  Continuous Interference with Prospective Contractual Relations

Pursuant to New York law, a claim alleging interference with contractual and business relationships is subject to a three-year statute of limitations.  See N.Y. C.P.L.R. § 214(4); Besicorp Ltd. v. Kahn, 736 N.Y.S.2d 708 (N.Y. App. Div. 2002).  The limitations period for tortious interference claims begins to run on the date that the alleged injury takes place.  See Weizmann Inst. of Science v. Neschis, 229 F. Supp. 2d 234, 252 (S.D.N.Y. 2002).  Defendants argue that as pled, the tortious interference occurred when Cargill terminated the contract with Omni in 2002, and therefore the claims are untimely.

Omni argues that the limitation period should be tolled based on the doctrine of fraudulent concealment.  Under New York law, the elements of fraudulent concealment are: 1) wrongful concealment by defendant, 2) which prevented the plaintiff's discovery of the nature of the claim within the statute of limitations period, and 3)6, 60 (2d Cir. 1998).  "A plaintiff must generally comply with the particularity requirements of Rule 9(b) for each of the three elements."  Alevizopoulos & Assocs., Inc. v. Comcast Int'l Holdings, Inc., 100 F. Supp. 2d 178, 184 (S.D.N.Y. 2000).[8]

As to Greenberg, Omni has properly pled fraudulent concealment.  Omni

---

[8] Defendants argue that the fraudulent concealment allegation is inadequate because Omni has not pled with particularity.  Although fraudulent concealment allegations typically must satisfy Rule 9(b), courts have held that the 9(b) requirements do not apply where, as here, the alleged fraud is the omission of certain acts rather than affirmative misrepresentations.  See Alevizopoulos, 100 F. Supp. 2d at 183 ("Comcast arguably need not have done anything to conceal its alleged fraud with Villares other than failing to notify plaintiffs of its actions….  The policy underlying Rule 9(b) would not be served by requiring particularization of statements when no such statements exist.").

had no reason to know that Greenberg was inappropriately involved in the Omni/Cargill

contract termination until 2004 when these "secret payments" came to light at the

arbitration.  By pursuing the arbitration against Cargill, and thereby attempting to

discover the underlying facts of the contract termination, Omni exercised the required

due diligence.

       Fraudulent concealment does not, however, apply to the claims against

Boan.  Although Boan and Cargill allegedly concealed their "conspiracy" and their

"secrets payments" until December 2004, Omni nonetheless had knowledge much earlier

that Boan was "interfering" with the Omni/Cargill contract and prospective relations

between Omni and Cargill.  Omni was surely on notice of interference when Cargill

terminated the contract and hired Boan from Omni.  The arbitration complaint also makes

clear that Omni had knowledge of facts giving rise to interference with relations between

Omni and Cargill.  That more evidence concerning this claim was later revealed in 2004

does not change the triggering date.

       This does not, however, end the inquiry.  Omni premises these claims on

the theory of "continuous wrongs."  Under this doctrine, "[i]ndividual breaches start the

Statute of Limitations running anew each time."  Kerr v. Brown, 283 A.D.2d 343, 345

(1st Dept. 2001) (citing Bulova Watch Co. v. Celotex Corp., 46 N.Y.2d 606, 608 (1979)).

Given that Omni alleges that each "secret payment" tortiously interfered with prospective

contractual relations, it would be premature to determine precisely which acts are time-

barred at the pleading stage.  What is clear, however, is that each separate of act of

tortious interference with prospective relations occurring after January 6, 2003 would be

actionable.

Therefore, all claims are timely, except claims of tortious interference with prospective relations against Boan occurring before January 6, 2003.

### IV.  Failure to State a Claim

Finally, Defendants argue that Omni has failed to state a claim for unfair competition and tortious interference.  The allegations in the complaint are said to be lacking as to the elements of unfair competition, which are "the taking and use of plaintiff's property to compete against the plaintiff's own use of the same property," <u>Roy Export v. Columbia Broad. Sys.</u>, 672 F.2d 1095, 1105 (2d Cir. 1982).  The argument is specious.  They contend that Omni's allegations that Boan "convinced" Cargill to use him as a broker or that he had obtained "papers" from Omni is insufficient because "papers" do necessarily constitute trade secrets.  Defendants are splitting hairs.  The level of specificity sought by Defendants is not required at this stage.  Omni has sufficiently alleged that Boan took confidential, proprietary information belonging to Omni and made false statements to Cargill.

Defendants' argument concerning the tortious interference is similarly specious.  In New York, a plaintiff must allege that he "would have received a contract but for the malicious, fraudulent, and deceitful acts of a third party…." <u>Union Car Advert. Co., Inc. v. Collier</u>, 263 N.Y. 386, 401 (1934).  Defendants argue that Omni has not alleged this required but-for causation element; but Omni has alleged: "<u>as a result of the conspiracy</u> Cargill rejected Omni as its actual and potential broker."  (Comp. ¶ 24) (emphasis added).  At this stage, this allegation is sufficient.  Omni is certainly not required to prove and establish but-for causation in the Complaint in order to survive a Rule 12(b)(6) motion.

## CONCLUSION

Defendants' motion to dismiss is granted as to the claims of tortious

interference with prospective relations against Boan occurring before January 6, 2003,

and DENIED in all other respects. The parties are ordered to submit a Case Management

Plan by September 6, 2007. The Clerk of Courts is ORDERED to close out this motion.


Dated: New York, New York
       August 24, 2007

SO ORDERED

PAUL A. CROTTY
United States District Judge

15